UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LORENZO D. TOMBS,

    Plaintiff,

v.                                                  Case No. 19-C-1164

JODI FIELDS, et al.,

    Defendants.

## DECISION AND ORDER

Plaintiff Lorenzo D. Tombs, who is representing himself, is proceeding with a claim that the defendants violated his Eighth Amendment rights and committed state law medical malpractice by prescribing and forcing him to take prescription medication (Duloxetine). Dkt. No. 18 at 5-6. On January 28, 2021, the defendants filed a motion for summary judgment. Dkt. No. 67. The motion is fully briefed and ready for decision. For the reasons explained below, the Court will grant the motion for summary judgment and dismiss this case.

## FACTS

At the relevant time, Tombs was an inmate at the Dodge Correctional Institution (DCI). Dkt. No. 69, ¶ 1. The defendants are medical care providers: Jodi Fields is an advanced practice nurse prescriber at DCI; Keith Johnson is health services manager at DCI; Monica Gagnon and Angelica Rowin-Fox are registered nurses at DCI; and Dr. Paul Bekx is Department of Corrections (DOC) medical director. *Id*., ¶¶ 4, 6-8.

Tombs has suffered from Multiple Sclerosis (MS) since before his incarceration. *Id*., ¶¶ 9, 11. MS is a disease of the central nervous system that causes disruption of brain signals. *Id*., ¶ 9.

Symptoms include vision problems, numbness, weakness, paralysis, balance problems, tremors, dizziness, headaches, a weak bladder, appetite suppression, and constipation. *Id*., ¶¶10, 42. MS is a chronic disease and has no cure. *Id*., ¶43.

Tombs arrived at DCI in August 2018. *Id*., ¶12. During an initial appointment on September 5, 2018, Tombs reported that he took Gabapentin and also smoked marijuana to ease his MS symptoms in the past. *Id*., ¶14; *see also* Dkt. No. 72-1 at 3. Following the appointment, nursing staff ordered a medical restriction for a low bunk and a low tier, but Tombs refused the recommended medical restrictions and wanted to wait until his physical examination before he accepted the restrictions. Dkt. No. 69, ¶¶15-16; *see also* Dkt. No. 72-1 at 4-5.

About a week later, on September 11, 2018, Fields conducted Tombs' physical examination. Dkt. No. 69, ¶17. During that appointment, Tombs requested Gabapentin for his MS, so Fields submitted a non-formulary drug request for the medication. *Id*., ¶19. Fields explains that Gabapentin is a "non-formulary" medication, which can only be prescribed when alternative formulary medications have been proven ineffective or are contraindicated (meaning, the drug should not be used because it may be harmful to the patient). *Id*., ¶20. Gabapentin, specifically, is a non-formulary medication because it has a high potential for abuse/misuse in the correctional setting and has high reports of diversion within the DOC. *Id*., ¶21. To receive a non-formulary medication, the DOC central pharmacy or the DOC medical director must approve a request for the medication. *Id*., ¶20. Dr. Bekx has authority to approve a request for non-formulary medication, but he never received or reviewed a non-formulary request for Gabapentin for Tombs. *Id*., ¶¶54-57. He also was not involved in prescribing Duloxetine, recommending any alternative medications, or providing any other medical care in this case. *Id*.

DOC Pharmacist Angela Hinkle (not a defendant) denied Field's request for Gabapentin on September 11, 2018. *Id.*, ¶19. After Hinkle denied the request for Gabapentin, Fields asked the pharmacist if it was appropriate to prescribe Duloxetine as an alternative medication. *Id.*, ¶22. Duloxetine is a psychiatric medication that is used to treat chronic pain disorders or chronic muscle/joint pain, including neuropathic pain common in patients with MS. *Id.*, ¶58. Duloxetine can be well suited for use in MS because of its effectiveness in other neuropathic conditions, its 12-hour half-life that allows for daily dosing, its mild adverse effect profile, and the potential for supplementary benefits in mood and bladder function. *Id.*, ¶59.

Fields noted in her request to the pharmacist that an online medication database indicated that Mirtazapine (an antidepressant medication that Tombs was already taking) could interact with Duloxetine. *Id.*, ¶22. The pharmacist responded that Mirtazapine and Duloxetine are frequently used together "with no ill effects." *Id.*, ¶23. A number of studies have also concluded that there is no evidence that Duloxetine has harmful effects on MS disease activity and there is no evidence to suggest that Duloxetine has adverse effects on MS patients. *Id.*, ¶61.

On September 12, 2018, Fields prescribed 30mg Duloxetine daily for 7 days as an alternative to Gabapentin, per the pharmacist's recommendation and approval. *Id.*, ¶24. Fields initially prescribed this lower dosage to allow Tombs time to adjust to the medication and observe any adverse side effects. *Id.* Adverse side effects can include difficulty sleeping, headaches, dizziness, blurred vision, constipation or diarrhea, dry mouth, and sweating. *Id.*, ¶60. Dizziness or lightheadedness can also occur when patients first start this medication or when the dose is increased. *Id.* Tombs did not report any side effects at that time, so the 30mg daily dose was later increased to 60mg daily. *Id.*, ¶24.

On September 29, 2018, about a month after Tombs started taking Duloxetine, he submitted a Health Service Request (HSR) stating, "I'm done taking all of these bloody medication[s]! I don't like the way they make me feel and think! I don't [sic] the voices told me not to trust ya'll, and now they're pissed whatever happen[s] next is not my fault." *Id*., ¶¶25, 48. Following this HSR, Gagnon met with Tombs to discuss his medication refusal. *Id*., ¶49. During that appointment, Tombs reported dizziness, light-headedness, and inability to eat or drink. Dkt. No. 13 at 3. Tombs states that Gagnon "refused to discontinue the prescription." *Id*. Gagnon, as a registered nurse, does not have the authority to prescribe medications, discontinue medications, or order labs or testing. Dkt. No. 69, ¶46.

About three weeks later, on October 19, 2018, Tombs submitted another HSR stating, "Bonjour; I am writing to you because one of this meds I'm taking is making me light headed and dizzy for 8 days now and I don't know what to do; please help me. Merci Bein!" *Id*., ¶50. Following this HSR, Rowin-Fox examined Tombs on October 21, 2018. *Id*., ¶¶25, 51. During that appointment, Tombs reported blurred vision, confusion, swelling of the lips/tongue/throat, itching, hives, hallucinations, suicidal thoughts, loss of balance and coordination, trouble concentrating, lethargy, changes in appetite, and fainting/falling spells. Dkt. No. 13 at 3. Rowin-Fox, as a registered nurse, also does not have the authority to prescribe medications, discontinue medications, or order labs or testing. Dkt. No. 69, ¶46. Rowin-Fox made a follow-up appointment with Fields for two days later. *Id*., ¶¶25, 51.

Fields saw Tombs for the follow-up appointment on October 23, 2018. *Id*., ¶¶26, 52. At that appointment, Tombs reported dizziness. Dkt. No. 13 at 3. Fields noted that his reported side effects seemed to correlate with the increase in dosage of Duloxetine to 60mg, so she decreased his dose of Duloxetine back to 30mg with the plan to stop the medication if the reported symptoms

4

did not resolve. Dkt. No. 69, ¶¶26, 52. Fields explains that, when discontinuing medication, it is important for patients to taper because abruptly stopping the medication can cause withdrawal symptoms. *Id*., ¶27. Tombs submitted another HSR, on December 4, 2018, requesting to stop taking Duloxetine. *Id*., ¶28. In response, Fields discontinued the Duloxetine the very next day, on December 5, 2018. *Id*., ¶¶28, 53.

Two days later, on December 7, 2018, Tombs was taken to the hospital for emergency care. *See* Dkt. No. 11 at 4. The circumstances leading up to the hospital visit are not entirely clear from the briefing materials. *See* Dkt. Nos. 69, 76-77. According to the complaint, nurses Gugler and Tapio (not defendants) noticed that Tombs had trouble walking, was difficult to understand, and his tongue appeared thick and deviated slightly to the right. Dkt. No. 13 at 4. Tombs' main compliant at the hospital was tongue swelling, slurred speech, and trouble swallowing for about a week. Dkt. No. 69, ¶¶31, 35. He received Benadryl. *Id*., ¶36. Discharge papers indicate that Tombs had a "presumed allergy to Duloxetine" and that he had responded well to Benadryl and Solu-Medrol (a steroid). *Id*., ¶37. But Tombs never received a diagnostic test at the hospital (or elsewhere) to confirm the purported allergy. Dkt. No. 68 at 7. The discharging physician noted, "I feel that the patient's neurological examination is mildly abnormal. The patient does show some signs of spasticity and weakness in his left lower extremity. More than likely, this is from his history of MS." Dkt. No. 69, ¶39. According to Tombs, on September 8, 2018, the hospital physician, Dr. Szmanda (not a defendant), came to his room and stated that he "was not under any circumstances to have been taking Duloxetine due to [his] history of Multiple Sclerosis." *See* Dkt. No. 76, ¶5. But there are no medical records memorializing this comment nor is there any other medical evidence showing that Duloxetine is contraindicated for patients with MS or for Tombs specifically. Dkt. No. 69, ¶¶58-61.

5

Three days after Tombs returned to the institution, on December 10, 2018, Fields wrote a progress note documenting that Tombs was hospitalized for one night for an apparent allergic reaction to Duloxetine. *Id.*, ¶30. Dr. Szmanda had recommended that Tombs start Copaxone as an alternative medication, so Fields submitted a non-formulary drug request for Copaxone the very same day she reviewed Dr. Szmanda's note. *Id.*, ¶¶30, 32. A short time later, Tombs was transferred to Oshkosh Correctional Institution. *Id.*, ¶41. Tombs states that he has suffered permanent injuries from taking Duloxetine including difficulty forming simple sentences, issues with walking, dizziness and frequent headaches, difficulty with his bladder, difficulty concentrating, loss of appetite, and other cognitive issues. *See* Dkt. No. 13 at 4-5.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an

element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Defendants Dr. Bekx, Johnson, Gagnon, and Rowin-Fox assert that they are entitled to summary judgment because they did not order the prescription for Duloxetine nor did they force Tombs to take the medication once it was prescribed. *See* Dkt. No. 68 at 18-21. Fields asserts that she is entitled to summary judgment because she acted reasonably and was not deliberately indifferent towards his serious medical condition. *Id*. at 15-18.

Section 1983 limits liability to public employees who are personally responsible for a constitutional violation. *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009). "An official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quoting *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982)). He or she "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id*. (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

Dr. Bekx and Johnson assert that they had no involvement in this case at all. Dr. Bekx, as the DOC medical director, had the authority to approve and/or recommend DOC formulary medication but he states that he did not review this particular case, make any decisions or recommendations with respect to this particular case, or provide any other medical treatment to Tombs. *See* Dkt. No. 68 at 20-21. Tombs concedes this is true. *See* Dkt. No. 77, ¶56. Johnson, who is HSU manager, similarly states that he did not review and/or respond to any of Tombs' requests to Health Services, nor did he provide any medical care to Tombs. *See* Dkt. No. 68 at 19. Johnson is not mentioned anywhere in the parties' proposed findings of fact or briefing materials,

7

apart from the defendants' note that he was a "nursing supervisor" in HSU. Johnson's role as a supervisor in HSU is not a source of liability under section 1983. *See Burks*, 555 F.3d at 593 (Section 1983 does not establish a system of vicarious responsibility). Thus, Dr. Bekx and Johnson are entitled to summary judgment based on lack of personal involvement.

Defendants Gagnon and Rowin-Fox state that they did not have the authority as registered nurses to order or discontinue the prescription for Duloxetine. They also note that they also cannot force inmates to take prescription medication and that Tombs knew this because he had refused medication in the past. Tombs also concedes that these facts are true. *See* Dkt. No. 77, ¶¶46-47. Gagnon and Rowin-Fox are also entitled to summary judgment.

To survive summary judgment on an Eighth Amendment deliberate indifference claim, Tombs must provide evidence from which a reasonable jury could conclude that: (1) he had a serious medical condition; and (2) Fields was deliberately indifferent towards that serious medical condition. *Norfleet v. Webster*, 439 F.3d 392, 395–96 (7th Cir. 2006). The inquiry into deliberate indifference asks whether "the prison official acted with a sufficiently culpable state of mind." *Id*. (citing *Walker v. Benjamin,* 293 F.3d 1030, 1037 (7th Cir.2002)). A prison official has a sufficiently culpable state of mind when the official "knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk." *Id*. at 397. This is a "high hurdle." *See Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012). It requires "something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Id*. (quoting *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)). Negligence does not meet this standard; and, even admitted medical malpractice does not give rise to a constitutional violation. *Norfleet,* 439 F.3d at 397. Tombs must show that Fields' medical decision was "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible

8

actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998)).

No reasonable jury could conclude that Fields was deliberately indifferent toward Tombs' serious medical condition. The undisputed facts show that, upon initially learning of Tombs' MS diagnosis, Fields attempted to order the medication Tombs had requested for his condition (Gabapentin). When the DOC pharmacist denied that request, Fields consulted with the pharmacist to determine alternative medication. Fields prescribed Duloxetine only after the DOC pharmacist approved its use for Tombs. The undisputed facts also show that Duloxetine is considered medically safe and effective for individuals diagnosed with MS, *see also Wilson v. Dittmann*, 732 F. App'x 475, 476 (7th Cir. 2018)(noting that a prisoner-plaintiff diagnosed with MS had a prescription for Duloxetine), and that Tombs, specifically, has never had a diagnosed allergy to Duloxetine (either at the time Fields ordered the prescription or even after his ER visit). Thus, Fields used her medical judgment and acted reasonably in initially deciding to prescribe Duloxetine to treat Tombs' MS.

Fields also used her medical judgment and acted reasonably in responding to Tombs' complaints about Duloxetine. When Tombs first reported a negative reaction to the medication, Fields reduced the dose by half. Fields explains that she tapered Tombs' medication (rather than abruptly discontinuing it that day) to avoid withdrawal symptom. When Tombs reported a second negative reaction to the medication, she immediately discontinued the medication the very next day. Fields also ordered a new medication (Copaxone) immediately upon learning that Dr. Szmanda recommended it following Tombs' ER visit. Tombs' disagreement with Fields' decision to prescribe Duloxetine and/or her decision to "taper" off the medication is not enough to establish deliberate indifference. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) ("[N]either medical

9

malpractice nor a mere disagreement with a [medical professional's] medical judgment amounts to deliberate indifference.")

The Court notes that section §1983 is a "tort damage action." *Lossman v. Pekarske,* 707 F.2d 288, 290 (7th Cir. 1983). "As in a common law tort action, the plaintiff in a civil rights tort action bears the burden of establishing that the defendant owed the plaintiff a duty, that the defendant breached his duties to the plaintiff, and that this breach caused the plaintiff actual damages." *Garza v. Henderson*, 779 F.2d 390, 395 (7th Cir. 1985). As noted above, there is no medical evidence showing that Duloxetine is dangerous for individuals diagnosed with MS nor is there medical evidence confirming that Tombs had a diagnosed allergy to Duloxetine. In other words, Tombs does not have any credible evidence from which a jury could conclude that Duloxetine caused an allergic reaction and/or that it aggravated his symptoms, as he purports in this lawsuit. Toward that end, the defendants explain that most of Tombs' complaints in this case are consistent with a diagnosis of MS, not with an allergic reaction to Duloxetine. *See* Dkt. No. 80. Tombs' assertion that he "was the one who felt the side effects" and so he "knows" that Duloxetine caused an allergic reaction, *see* Dkt. No. 76 at 2, is not sufficient to establish causation. *Wilson*, 732 F. App'x at 476 ("But surviving summary judgment requires evidence, not speculation."). Similarly, his assertion that Dr. Szmanda told him that Duloxetine should never be prescribed to MS patients is not supported by his ER medical records or any other medical evidence. Based on the undisputed facts, no reasonable jury could conclude that Fields provided medical care that fell so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment. Fields is therefore entitled to summary judgment on the Eighth Amendment deliberate indifference claim.

Given that the defendants are entitled to summary judgment on Tombs' Eighth Amendment deliberate indifference claim, the Court will relinquish jurisdiction over any related state law medical malpractice claims against Dr. Bekx and Fields. *See Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008) (citing *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993))(noting that when "the federal claim in a case drops out before trial," a district court usually "relinquish[es] jurisdiction over any supplemental claim to the state courts.") Accordingly, the Court will grant the defendants' motion for summary judgment and dismiss this case.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (Dkt. No. 67) is **GRANTED** and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Dated at Green Bay, Wisconsin this 26th day of May, 2021.

                                                          s/ William C. Griesbach
                                                          William C. Griesbach, District Judge
                                                          United States District Court